```
UNITED STATES DISTRICT COURT                        For Online Publication Only
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STEPHEN A. SCHWARTZ,

                Plaintiff,

        v.                                          MEMORANDUM &
                                                    ORDER
                                                    13–CV–5428 (JMA) (SIL)
B&D MODELING & RESTORATION, INC.,
and JNC HOLDINGS LLC,

                Defendants.
----------------------------------------------------------X
```

APPEARANCES:

    Timothy F. Schweitzer
    Hofmann & Schweitzer
    360 West 31st Street, Suite 1506
    New York, NY 10001
        *Attorney for Plaintiff*

    Michelle M. Arbitrio
    Wilson Elser Moskowitz Edelman & Dicker
    3 Gannett Drive
    White Plains, NY 10604
        *Attorney for Defendant B&D Remodeling & Restoration, Inc.*

    Kevin P. Slattery
    Tromello, McDonnell & Kehoe
    P.O. Box 948
    3 Huntington Quadrangle, Suite 305N
    Melville, NY 11747
        *Attorneys for Defendant JNC Holdings LLC*

**AZRACK, United States District Judge:**

Plaintiff Stephen Schwartz has sued defendants B&D Modeling & Restoration, Inc. ("B&D") and JNC Holdings LLC ("JNC") for negligence. Plaintiff was a passenger on a boat owned by B&D. While the boat was moored to a dock owned by JNC, plaintiff attempted to disembark from the boat and fell to the dock, sustaining injuries. Currently pending before the

Court is JNC's motion for summary judgment on plaintiff's negligence claim and B&D's cross-claims against JNC for contribution and indemnification. For the reasons stated below, JNC's motion for summary judgment is granted, and JNC is dismissed from this suit.

## I. BACKGROUND

B&D is a company that builds and renovates houses on Fisher's Island, New York. (Dep. of David Beckwith at 6.) B&D was hired by an individual named Michael Jeffries, a non-party to this litigation, to build a new home on Fisher's Island. (Dep. of Mark Richards at 10–12.)

Plaintiff is an architect who has worked with Jeffries on various commercial and personal projects over the past twenty years. (Dep. of Stephen Schwartz at 9–12.) Jeffries hired Schwartz to assist in the building of his home on Fisher's Island. (Id. at 11–12, 17–18.)

B&D's office is on Fisher's Island. (Richards Dep. 6.) To reach Fisher's Island, Schwartz and B&D employees traveled on the "Baby Dolly," a forty-foot boat owned by B&D. (Id. at 16–18; Beckwith Dep. 8; Schwartz Dep. 24.) The Baby Doll has tires affixed to its sides, which act as bumpers. (Schwartz Dep. 49.)

The Baby Doll would depart for Fisher's Island from Noank, Connecticut. (Id. at 17.) The Baby Doll would then dock at B&D's office on Fisher's Island. (Id. at 21; Richards Dep. 17.) B&D leased both its office on Fisher's Island and the accompanying dock from JNC, which owns the building and dock. (Beckwith Dep. 6–7.) David Beckwith is the president and owner of B&D. (Id. 5.) Beckwith also owns 95 percent of JNC. (Id. at 6–7.)

On November 28, 2012, plaintiff was injured when he fell while disembarking from the Baby Doll at the dock on Fisher's Island. On the day of the accident, plaintiff was the last person to get off the boat. (Schwartz Dep. 47.) Nobody else was on the dock at the time. (Id. at

2

48.) As plaintiff was getting off the boat, he put one foot on a tire attached to the side of the boat and then put one foot on the dock. (Id.) Plaintiff also grabbed one of the dock's pilings as he stepped down. (Id. at 51, 104.) At that point, plaintiff fell "because there must have been some movement on the boat." (Id. at 49, 54) On the day of the accident, there was about a three-foot drop from the deck of the Baby Doll to the dock. (Richards Dep. 27.)

Prior to working on the Fisher's Island project, plaintiff had limited experience on boats. (Schwartz Dep. 105.)

Plaintiff has brought the instant suit against B&D and JNC, claiming that both defendants were negligent in failing to provide a safe means of disembarking from the boat, such as a gangway or ladder.

It is undisputed that JNC never provided any ladders or gangways on the dock. (Beckwith Dep. 15.) And, Beckwith testified that he never saw any ladders being used on the dock to assist people getting off of the Baby Doll. (Id. at 25.)

Prior to the accident, plaintiff had complained to Mark Richards, a project manager at B&D, about the safety of disembarking from the boat at Fisher's Island. (Schwartz Dep. 82; Richards Dep. 6.) On one occasion before the accident, Richards had put a stepladder with three steps out on the Fisher's Island dock to help plaintiff get off the boat; however, the stepladder "didn't work," so it was never used again. (Schwartz Dep. 82–84; see also Richards Dep. 50 (stating that he never provided a stepladder for Schwartz, but that occasionally, "one of our men will come out . . . and put a ladder out if the boat is . . . particularly high that day").)

3

## II.  DISCUSSION

### A.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" "while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

### B.  Premises Liability and the Appellate Division's Decision in *Raab v. Laboz*

The question of whether JNC was negligent is one of New York law.[1] See Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir. 1993) ("Absent a maritime status between the parties, a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law.").

---

[1] Both plaintiff and JNC concede that New York law applies.  B&D does not explicitly concede this point, but relies almost exclusively on decisions involving New York law.

4

Under New York law, a plaintiff seeking recovery for personal injuries under a negligence theory must show duty, breach, actual and proximate causation, and damages. Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006).

A landowner owes a "duty of care to those entering upon his property to keep it in a reasonably safe condition under the circumstances." Farley v. Smith, 569 N.Y.S.2d 172 (App. Div. 2d Dep't 1991); see Basso v. Miller, 40 N.Y.2d 233, 241 (1976) ("A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." (citation and quotation marks omitted)).

The decision most on point here is Raab v. Laboz, 641 N.Y.S.2d 400 (App. Div. 2d Dep't 1996). In Raab, the plaintiff was a passenger on a yacht. The plaintiff was injured when, after disembarking from the yacht to a platform situated on a dock, the plaintiff attempted to help another passenger disembark from the yacht. Id. The other passenger collided with the plaintiff, injuring him. Id. The plaintiff then sued both the yacht owner and the dock for negligence. The Appellate Division denied the yacht owner's motion for summary judgment because there were issues of fact as to "whether [the yacht owner] breached his duty of care to his passengers by failing to provide them with a safe means of disembarking from the yacht and, if so, whether that breach proximately caused the plaintiff's injuries." Id. However, the Appellate Division held that the dock was entitled to summary judgment, concluding that, "[u]nder the circumstances of this case, [the dock], unlike [the yacht owner], did not have a duty to provide for the safe ingress and egress of passengers to and from the yacht." Id. (emphasis added). The Appellate Division also held that the plaintiff failed to show that the dock "breached its duty of care as the owner of the premises, since there [was] no proof that [the dock] erected, maintained, or supervised the

5

use of the platform, or that the platform itself was improperly constructed, in disrepair, or in any manner defective." Id.

The Court notes that the Appellate Division's decision in Raab does not provide much in the way of facts. However, the parties' briefs to the Appellate Division provide further details about the incident that highlight the similarities between Raab and the instant suit.[2] In Raab, the yacht owner had leased the dock space at issue for the summer—this was not a one-off situation where the yacht was moored at an unfamiliar dock. (Brief of Plaintiff-Respondent ("Raab Pl.'s Br."), Raab v. Laboz, 641 N.Y.S.2d 400 (N.Y. App. Div. 1996) (No. 1995-02880), 1995 WL 17844931, at *2.) When the accident occurred, the yacht owner had already been using the dock every weekend for over a month. (Id. at *1–2; Reply Brief of Appellant Laboz, Raab v. Laboz, 641 N.Y.S.2d 400 (N.Y. App. Div. 1996) (No. 1995-02880), 1995 WL 17844932, at *1.) The "platform" at issue was a small wooden staircase that rose three feet above the surface of the dock. (Raab Pl.'s Br., 1995 WL 17844931, at *1.) At the time of the accident, there was a two-foot vertical drop from the deck of the boat to the top of the platform, as well as a two-foot horizontal gap between the platform and the boat. (Id. at *2; Brief of Appellant Laboz, Raab v. Laboz, 641 N.Y.S.2d 400 (N.Y. App. Div. 1996) (No. 1995-02880), 1995 WL 17828197, at *6.) Finally, not only was the dock's owner apparently aware that the platform was being used by customers to get on and off of boats, but the dock owner apparently also admitted that he had himself "probably" boarded the yacht once using this same platform. (Raab Pl.'s Br. at *3.)

Like Raab, decisions from other jurisdictions have also rejected similar claims that dock owners have a duty to provide a means of access between the dock and the boat. See Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 333–34 (5th Cir. 1993) (affirming grant of

---

[2] While parties' representations in their briefs may not always accurately represent the record, the parties in Raab were in general agreement about the content of some of the testimony at issue. And, while certain other relevant facts are mentioned only in one party's papers, those facts were not contradicted by the opposing parties.

6

summary judgment against employee of vessel who fell off ladder provided by the vessel and explaining that the dock owner's only duty under Louisiana law was "to provide a dock which is reasonably safe" and that this duty was not breached because there "was no defect in or on the dock itself, nor was the ladder furnished by the dock owner or under its control"); Wuestewald v. Foss Mar. Co., 319 F. Supp. 2d 1002, 1004 (N.D. Cal. 2004) (concluding, after bench trial, that dock was not liable for plaintiff's fall from ladder supplied by the vessel, and explaining that although California law imposed a duty of care on the dock to provide business invitees with "a dock that is reasonably safe and to warn of hidden dangers known to the owner and not reasonably apparent to the invitee," the dock "did not have a duty to assist plaintiff or to provide a safe means for accessing its dock from the [vessel]"). As one court has noted, "[g]enerally speaking, the circumstances giving rise to a dock owner's liability involve an actual physical defect of the dock itself, such as rotten or missing floor planks, manifestly inadequate lighting on a dock routinely used during the night, or slippery floor surfaces." Tullos v. Rowan Drilling Co., Inc., No. 06-CV-109, 2006 WL 2521329, at *1 (S.D. Tex. Aug. 25, 2006) (applying Louisiana law).

In light of Raab and the other authority cited above, the Court concludes that JNC is entitled to summary judgment. The arguments of plaintiff and B&D, which are addressed below, are not persuasive.

## C. The Arguments of Plaintiff and B&D

### 1. Plaintiff's Arguments

Plaintiff raises three arguments. First, plaintiff contends that Raab actually supports plaintiff's position because, according to plaintiff, Raab stands for the proposition that if a dock fails to provide a means of access between the dock and the boat, then the dock has breached the

7

duty it owes to passengers as the owner of the premises. (Pl. Mem. in Opp. to Mot. for Summ. J. at 7.) This argument is not persuasive. Among other things, plaintiff's argument simply ignores Raab's conclusion that "[u]nder the circumstances of this case, [the dock], unlike [the boat owner], did not have a duty to provide for the safe ingress and egress of passengers to and from the yacht." Raab, 641 N.Y.S.2d 400.

Second, plaintiff cites the general standard for premises liability and appears to imply that Raab, which applied New York law in circumstances analogous to the instant case, was incorrectly decided. Plaintiff points out that in Peralta v. Henriquez, 100 N.Y.2d 139, 143 (2003), the New York Court of Appeals stated that "[w]henever the general public is invited into stores, office buildings and other places of public assembly, the owner is charged with the duty of providing the public with a reasonably safe premises, including a safe means of ingress and egress." Id. (quoting Gallagher v. St. Raymond's Roman Catholic Church, 21 N.Y.2d 554, 557 (1968)). However, both Peralta and Gallagher concerned claims that a property owner was negligent by failing to provide adequate lightning. In any event, neither case convinces the Court that Raab was wrongly decided and should not guide the analysis in the instant case.

Third, plaintiff stresses that because Beckwith owned both B&D and JNC, JNC knew that B&D was not providing any gangway or ladder for the passengers of the Baby Doll. This fact does not alter the analysis. Moreover, the Court notes that the dock owner in Raab appears to have had similar knowledge—namely, that an inadequate platform was being used by the yacht owner. Although JNC knew, through Beckwith, that no ladder or gangway were being provided on the dock, JNC is still entitled to summary judgment.

8

### 2. B&D's Arguments

B&D's arguments are similarly unpersuasive. Notably, B&D never even addresses Raab. Instead, B&D relies on Purdy v. Belcher Refining Co., 781 F. Supp. 1559, 1562 (S.D. Ala. 1992), which did not involve New York law and is, in any event, factually distinguishable. In Purdy, an independent contractor ascended a ladder from a dock to a barge and was injured when the ladder broke. Id. at 1560–61. The court found the defendant refining company, which owned the dock, liable. The court concluded that the dock's "duty of due care to have the premises and facilities necessarily used in a reasonably safe condition for use by the . . . independent contractor" included the duty to "exercise of due care in furnishing a reasonably safe means of ingress and egress from the dock to the deck of the barge . . . ." Id. at 1561. However, the facts of Purdy are clearly distinguishable from the instant suit. Although it was unclear in Purdy whether the dock actually owned the defective ladder, the court found that the dock had a customary practice of making ladders available, and the defective ladder was apparently fastened to the dock. Id. at 1560–61. Thus, the negligence in Purdy stemmed from a defective ladder, and the dock appears to have been responsible, in some fashion, for the presence of the ladder on the dock. By contrast, here, plaintiff alleges that JNC was negligent for providing not providing a means of access, and JNC did not have a customary practice of providing such means in the past.[3]

B&D also argues that factual questions necessarily exist about the condition of the dock because plaintiff fell while both of his feet were on the dock, and he was grabbing one of the

---

[3] B&D argues that Purdy is relevant here because, like Schwartz, the plaintiff in Purdy was not employed by the vessel. In finding the dock liable, the court in Purdy stressed that the plaintiff was not a member of the vessel's crew and that the plaintiff's presence on the dock was "to determine quantity and specification of the [defendant's] oil," which "was a matter in which [defendant] had a direct, significant and commercial interest." Id. at 1561. B&D flags this point (as did the decision Florida Fuels, when it distinguished Purdy). The Court, however, fails to see what relevance this distinction has under New York law. B&D never attempts to draw such a connection. Notably, like Schwartz, the plaintiff in Raab was also not an employee of the vessel.

9

dock's pilings at the time of his fall. (See Schwartz Dep. 54–55.) This argument is meritless. There is no evidence in the record about any problems with the dock or the piling. And, plaintiff himself admits that he fell "because there must have been some movement on the boat." (Schwartz Dep. 49, 54)

B&D also suggests that JNC had some obligation to post signs warning of potential dangers. The Court disagrees. Plaintiff's citation to Bailey v. Seaboard Barge Corp., 385 F. Supp. 2d 310 (S.D.N.Y. 2005), is inapposite. See id. (granting summary judgment to dock where, inter alia, the signs on the dock merely stated "Warning" and "No Visitors," and the plaintiff argued that the dock was obligated to provide signs and personnel to direct the plaintiff where to board the vessel). Moreover, one decision from outside this Circuit has squarely rejected plaintiff's argument. See Tullos v. Rowan Drilling Co., Inc., No. 06-CV-109, 2006 WL 2521329, at *1 (S.D. Tex. Aug. 25, 2006) (granting dock summary judgment under Louisiana law where plaintiff chef, who was injured when he attempted to board the vessel by stepping on a tire bumper, argued that the dock "failed to warn Plaintiff of the dangers inherent in boarding a vessel in the manner he attempted" and "should have provided signs about proper boarding locations and procedures for its invitees, provided a check-in station at the dock, or that it should have had employees on duty to assist invitees and or monitor the premises"). Under the circumstances here, B&D's failure to warn argument is insufficient to stave off summary judgment.

Finally, B&D contends that, if JNC is dismissed, then B&D is entitled to an instruction that B&D provided plaintiff a safe means of egress. This argument is meritless.

## III. CONCLUSION

For the foregoing reasons, JNC's motion for summary judgment against both plaintiff and B&D is granted. JNC is dismissed from this suit.

Dated: March 31, 2016
Central Islip, New York

              _____/s/ (JMA)_____
              JOAN M. AZRACK
              UNITED STATES DISTRICT JUDGE